

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street  |  New York, NY 10019-6131  |  tel 212.858.1000  |  fax 212.858.1500

Carolina A. Fornos
tel: 212.858.1558
carolina.fornos@pillsburylaw.com

November 22, 2021

**BY ECF**

The Honorable Nicholas G. Garaufis
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Przewozman, et al. v. Qatar Charity, et al.*, 20-cv-6088 (NGG)

Dear Judge Garaufis:

Counsel for Masraf Al Rayan ("MAR") writes pursuant to Rules III.E and V.A.2-3 of Your Honor's Individual Rules to request an extension of time to respond to the Complaint until January 31, 2022, and to request a pre-motion conference prior to MAR's filing of a motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6).  Plaintiffs consent to the requested extension.

**Background**

Plaintiffs have filed a Complaint alleging four causes of action under the Anti-Terrorism Act (18 U.S.C. § 2331, *et seq*.) ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), against three Defendants, including two Qatari banks:  MAR and Qatar National Bank.  MAR does not have a presence in the United States; it is headquartered in the State of Qatar ("Qatar").  Plaintiffs admit that MAR "ha[s] no U.S. branch or office."  (ECF No. 1 ¶ 158.) Lumping all Defendants together, the Complaint conclusorily alleges that the State of Qatar "dominates and controls" the Defendants "[t]o accomplish its goal of spreading acts of terrorism and violence in Israel."  (*Id*. ¶ 5.)

The crux of Plaintiffs' claims against MAR is that MAR violated the ATA and JASTA by providing routine banking services to a customer, who, in turn, allegedly provided financing to Hamas and Palestinian Islamic Jihad ("PIJ") and which thereafter, four years after the banking activities alleged in the complaint (*id*. ¶¶ 17, 106, 128), allegedly caused Plaintiffs' injuries.  While MAR deplores the terrorist attacks described in the Complaint, all allegations against MAR should be dismissed as legally deficient.

**Procedural History**

On December 15, 2020, Plaintiffs filed a Complaint (ECF No. 1) and Summons (ECF No. 4) naming MAR as one of three Defendants. On January 4, 2021, Plaintiffs filed an *Ex Parte* Motion for Issuance of Letters Rogatory for the Purpose of Serving Defendants, along with a Supporting Memorandum of Law and Declaration (ECF Nos. 7, 8, 9). Your Honor subsequently granted the motion on January 5, 2021 (ECF No. 10), however, such service has not occurred. On November 9, 2021, Plaintiffs attempted to serve MAR by Federal Express as notified in a letter dated November 1, 2021 from Plaintiffs' counsel to the Clerk of Court, which Plaintiffs then filed with this Court on November 5, 2021, requesting that the Clerk effect such service on Plaintiffs' behalf. (ECF No. 11.) On November 18 and November 19, 2021, undersigned counsel entered their appearances in this case. (ECF Nos. 14, 18, 19.)

**The Complaint Is Legally Deficient and Should be Dismissed**

The Complaint should be dismissed on a number of grounds, including but not limited to:

(1) *Improper Service and Insufficiency of Service of Process.* Federal Express delivery upon MAR, based in Qatar, is not proper service. Qatar "is not a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, or any other service treaty," as specified in FRCP Rule 4(f)(1). (ECF No. 8 at 3.) As Plaintiffs acknowledged, "in order for a judgment against Defendants in this action to be enforceable in Qatar against Defendants' assets located there, service *must* be effected in Qatar pursuant to letters rogatory." (*Id*. (emphasis added).)

(2) *Lack of Personal Jurisdiction.* MAR has no branch or office in the United States. (ECF No. 1 ¶ 158.) Plaintiffs' sole basis for personal jurisdiction is U.S. correspondent banking activity which has no nexus to Plaintiffs' injuries and thus, is not "purposeful." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168–69 (2d Cir. 2013); *see also Singer v. Bank of Palestine*, 19-cv-006 (ENV) (RML), 2021 WL 4205176 at *4 (E.D.N.Y. Apr. 30, 2021). Nor can Plaintiffs satisfy basic constitutional requirements of minimum contacts.

(3) *Lack of Subject-Matter Jurisdiction.* While devoid of any allegations against MAR beyond allegedly providing routine financial services to a customer, the majority of the complaint focuses on Qatar and the Qatari royal family, their alleged support of terrorism, and their alleged control over defendants. (ECF No. 1 ¶¶ 5, 68-69 ("[t]o accomplish its goal of spreading acts of terrorism and violence in Israel while evading international sanctions, Qatar coopted several institutions that it dominates and controls…")). Plaintiffs' allegations run afoul of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq*, which "confers upon foreign states and their instrumentalities immunity from the jurisdiction of the courts of the United States." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 109, 111 (2d Cir. 2013).

(4) *Failure to State a Claim Upon Which Relief May be Granted.* Plaintiffs cannot maintain causes of action against MAR for violations of the ATA and JASTA under either a primary

or secondary liability theory. Plaintiffs cannot maintain causes of action against MAR based on a primary liability theory because banking activity is not an act of violence as required by the statute. *See Bartlett v. Société Générale de Banque Au Liban SAL*, No. 19-CV-00007 (CBA) (VMS), 2020 WL 7089448, at *8 (E.D.N.Y. Nov. 25, 2020). ("[P]roviding financial services such as those alleged here is not an act which is 'violent or dangerous to human life' as contemplated by the ATA. Accordingly, Plaintiff's primary liability claims are dismissed."). Nor can MAR's alleged banking activity plausibly have been "intended to intimidate civilians or influence a government." *See Zapata v. HSBC Holdings PLC*, 414 F.Supp.3d 342, 358-59 (E.D.N.Y. 2019) (quotations omitted). Moreover, because the alleged attack occurred four years after the alleged banking activity and Plaintiffs do not allege "a sufficiently direct relationship between the conduct in question and the injuries for which recovery is sought," Plaintiffs fail to plead proximate causation. *Id.* at 355–56; *compare* ECF No. 1 ¶ 17 ("The attack that killed Pinches Menachem Przewozman and injured Plaintiffs occurred on May 5, 2019") *with id.* ¶ 106 ("From at least 2011 through 2015, Hamas and PIJ knowingly, willfully, and unlawfully combined…with Defendants").

Nor can Plaintiffs plausibly allege causes of action against MAR under a secondary liability theory because they fail to allege, in non-conclusory statements, that MAR aided or abetted, "by knowingly providing substantial assistance," the alleged act of international terrorism or "conspire[d] with the person who committed" the alleged act that caused Plaintiffs' injuries. 18 U.S.C. § 2333(d)(2).

Similarly deficient are claims for injuries allegedly incurred by foreign nationals. (ECF No. 1 ¶¶ 26, 28, 30-31, 33.) Section 2333(a) "preclud[es] claims by foreign nationals (who just so happen to be survivors and heirs of U.S. nationals killed in the terrorist attacks at issue in this case) for personal damages such as physical injury, pain and suffering, loss of companionship, and emotional distress." *Averbach v. Cairo Amman Bank*, 1:19-cv-00004-GHW, 2020 WL 1130733 at *2 (S.D.N.Y. Mar. 9, 2020).

Accordingly, MAR respectfully requests until January 31, 2022 to file its motion to dismiss, to which Plaintiffs consent. This request is MAR's first request for an extension and such an extension would not affect any other scheduled dates or otherwise prejudice any parties to this action.

> Respectfully submitted,
>
> /s/ Carolina A. Fornos
>
> Carolina A. Fornos
> Aryeh L. Kaplan (*pro hac vice*)
> Markenzy Lapointe (*pro hac vice*)
> *Counsel for Defendant Masraf Al Rayan*

cc: All parties of record (by ECF)