

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

November 24, 2021

**BY ECF**

The Honorable Nicholas G. Garaufis
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *Przewozman v. Qatar Charity*, 20-cv-6088 (NGG), Request for Pre-Motion Conference

Dear Judge Garaufis:

On behalf of Defendant Qatar National Bank Q.P.S.C. ("QNB") and in accordance with Rule V(A)(2) of the Court's Individual Rules, we respectfully request a pre-motion conference in connection with QNB's anticipated motion to dismiss and an extension of QNB's time to file the motion to dismiss to January 31, 2022. The deadline for QNB to file a responsive pleading is currently November 30, 2021. This is QNB's first request for an extension, and Plaintiffs consent to the extension. Plaintiffs have brought this action to recover damages for alleged violations of the Anti-Terrorism Act (the "ATA"), asserting claims for wrongful death, personal injury, and related torts against QNB, Qatar Charity ("QC"), and Masraf Al Rayan ("MAR"). *See* Compl. ¶¶ 339-95. Specifically, Plaintiffs allege that QNB maintained bank accounts for QC and other individuals, and that funds transferred from these accounts were ultimately used to finance activities of Hamas and Palestinian Islamic Jihad ("PIJ") that caused injury to Plaintiffs. *See* Compl. ¶¶ 14-18. QNB disputes these allegations and will move to dismiss Plaintiffs' claims on the following grounds:

*1.  **Plaintiffs' attempted service on QNB is insufficient.*** After initially seeking to effect service through Letters Rogatory (ECF No. 10), which has not been accomplished, plaintiffs attempted to serve QNB pursuant to Federal Rule of Civil Procedure ("FRCP") 4(f)(2)(C)(ii). However, "Rule 4(f)(2)(C)(ii) allows service via mail, subject to certain restrictions," the most relevant of which is that such service is "*not prohibited by the foreign country's law*." *In re Coudert Bros. LLP*, No. 16-CV-8237 (KMK), 2017 WL 1944162, at *10 (S.D.N.Y. May 10, 2017) (emphasis added). None of Plaintiffs' filings address Qatari law on service by mail. "Plaintiffs' silence on the issue does not allow the court to assume that service by mail is not prohibited" by that law. *Nabulsi v. Zayed Al Nahyan*, No. H-06-2683, 2008 WL 1924235, at *4 (S.D. Tex. Apr. 29, 2008). Service is also improper because Plaintiffs have not provided any information about the individual named "H. Hussain" who purportedly received the FedEx package delivered to QNB containing the summons and complaint. *See* ECF No. 24; *Rosenberg v. Lashkar-E-Taiba*, No. 10-CV-5381 (DLI) (CLP), 2017 WL 11647006, at *2, 4 (E.D.N.Y. Mar. 31, 2017).

ROPES & GRAY LLP

- 2 -

**2. This Court does not have personal jurisdiction over QNB.** Plaintiffs do not sufficiently allege personal jurisdiction pursuant to New York's long-arm statute.[1] Plaintiffs' vague allegations that Defendants "transacted business and committed tortious acts within the United States (and New York) by transferring funds through the United States (and New York) for the benefit of Hamas and PIJ" are insufficient. Compl. ¶ 23; *see Licci ex rel. Licci v. Lebanese Canadian Bank, SAL (Licci II)*, 732 F.3d 161, 168 (2d Cir. 2013) (regarding allegations involving foreign banks engaging with correspondent banks in New York, both the "frequency" and "deliberate nature" of the bank's contacts are "determinative"). Plaintiffs allege no facts regarding the volume, frequency, or deliberate nature of any alleged funds transferred by QNB through New York. In addition, the contacts alleged are far from "substantial" and are not sufficiently alleged to have been the "proximate cause" of the Plaintiffs' injuries. *SPV Osus, Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018). Notably, the only allegations in the Complaint that mention QNB and New York are allegations against the Defendants collectively, not against QNB specifically. Compl. ¶¶ 23-25; *see Walden v. Fiore*, 571 U.S. 277, 284 (2014) (explaining that a defendant's contacts with the forum state to establishing personal jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum") (citation omitted).

**3. The Foreign Sovereign Immunities Act may provide QNB immunity from personal or subject matter jurisdiction.** The Foreign Sovereign Immunities Act ("FSIA") establishes a general rule that foreign states, including agencies and instrumentalities as well as organs of foreign states, are immune from the jurisdiction of federal and state courts in the United States. 28 U.S.C. §§ 1603(a), 1604. Qatar's Minister of Finance customarily serves as the Chairman of QNB's Board of Directors, and at least half of the Board's members are representatives of the Qatar Investment Authority, which must own at least 50% of QNB's shares. *See* Articles 7, 20, 23, and 29 of QNB's Articles of Association. The allegations of the complaint assert that QNB was directed in certain respects by government officials in Qatar. *See* Compl. ¶¶ 1, 5-6, 78-80. The FSIA affords QNB immunity from suit in these circumstances as an agency, instrumentality, or organ of Qatar.

**4. Plaintiffs fail to state a claim for primary liability under § 2333(a).** First, Plaintiffs' conclusory assertion that QNB provided material support to Foreign Terrorist Organizations ("FTOs") through "financial assistance" that was "integral to the ability of [those FTOs] to carry out their terrorist attacks," Compl. ¶¶ 370, 390, is premised on merely transferring money from a client's account in one bank to accounts in another bank of that same client (not alleged itself to have engaged in any terrorist acts). *See* Compl. ¶¶ 10, 14, 170-72. This amounts to nothing more than routine banking services, which alone cannot establish an international act of terrorism under

---

[1] Plaintiffs allege two additional statutory bases for personal jurisdiction: (i) minimum contacts with the United States as a whole pursuant to Fed. R. Civ. P. 4(k)(2) and (ii) service of process as provided under the ATA. These are also insufficient bases to establish personal jurisdiction over QNB. Plaintiffs have alleged no facts that QNB has significant contacts with the United States as a whole. The ATA provides that "any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent." 18 U.S.C. § 2334(a). QNB does not reside or have an agent in the Eastern District of New York, and Plaintiffs have not served QNB in this district.

ROPES & GRAY LLP

- 3 -

the ATA.  *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 327 (2d Cir. 2018); *Siegel v. HSBC Bank USA, N.A.*, No. 17-cv-6593 (DLC), 2018 WL 3611967, at *3 (S.D.N.Y. July 27, 2018), *aff'd sub nom. Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019) ("'[P]roviding routine financial services to members and associates of terrorist organizations' does not necessarily satisfy the ATA's requirements for an act of terrorism.") (citation omitted).

Second, the Complaint fails to plausibly allege proximate cause because the services QNB allegedly provided were routine banking services and far too attenuated from Plaintiffs' injuries. *See Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013); *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 533 (S.D.N.Y. 2019), *rev'd on other grounds*, 999 F.3d 842 (2d Cir. 2021).

***5. Plaintiffs fail to state a claim of aiding and abetting secondary liability pursuant to 18 U.S.C. § 2333(d).***  Plaintiffs do not plausibly allege that QNB was generally aware of its role in an overall illegal activity that foreseeably led to the alleged terrorist acts. *See Honickman v. BLOM Bank SAL*, 6 F.4th 487, 496 (2d Cir. 2021); *Averbach v. Cairo Amman Bank*, No. 19-cv-0004, 2020 WL 486860, at *13 (S.D.N.Y. Jan. 21, 2020), *R. & R. adopted sub nom. Averbach for Estate of Averbach v. Cairo Amman Bank*, 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020) ("Merely provided banking services to a Hamas-affiliated charity, does not satisfy JASTA's *mens rea* requirement."). Also, while some courts have suggested that the existence of certain "red flags" with respect to an individual or entity that may be affiliated with a FTO may be enough to establish general awareness, Plaintiffs do not allege the types of severe red flags that existed in those cases.

Further, Plaintiffs fail to satisfy the Second Circuit's test to determine whether QNB provided knowing and substantial assistance to the principal in the acts that resulted in Plaintiffs' injuries.[2]  *See Linde*, 882 F.3d at 329 (citation omitted).  While Plaintiffs fail to allege facts to satisfy many of the six factors the Second Circuit has analyzed, most notably, Plaintiffs plead a relationship that is far too attenuated between QNB and the FTOs at issue to satisfy the fourth factor of that analysis (aside from simply an allegation that it maintained bank accounts for entities or persons allegedly connected to Hamas or PIJ, which the Complaint fails to connect to any terrorist activities).  *See Honickman*, 6 F.4th at 500-01 (discussing *Siegel*).

***6. Plaintiffs fail to state a claim of conspiracy secondary liability pursuant to 18 U.S.C. § 2333(d).***  The Complaint contains no allegations that QNB conspired directly with the person or entity that committed the acts of international terrorism that injured Plaintiffs, which is required to establish conspiracy secondary liability. *See, e.g., Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 98 n.1 (E.D.N.Y. 2019).  Plaintiffs' allegations that QNB provided banking services for QC and certain persons affiliated with FTOs cannot "lead one to infer that [QNB] shared any common goal of committing an act of international terrorism." *See, e.g., Kaplan*, 405 F. Supp. at 534.

---

[2] The factors the Second Circuit has referenced are (1) the nature of the act encouraged; (2) the amount of assistance given by the defendant; (3) defendant's presence at the time of the tort; (4) the defendant's relation to the principal; (5) the defendant's state of mind; and (6) the duration of the defendant's assistance.

ROPES & GRAY LLP

- 4 -

Respectfully submitted,

*/s/ Michael G. McGovern*

Michael G. McGovern

cc: All parties of record (by ECF)